SHEWALTER, Appellant, v. MISSOURI PACIFIC RAILWAY
COMPANY.

In Banc, December 5, 1899.

1. **Appellate Jurisdiction**: FEDERAL STATUTE. Before this court
can have jurisdiction of an appeal on the ground that a Federal
statute is involved, it must appear from the record that the point was
raised at the trial and the protection of the statute was denied the
losing party.

2. ———: EFFORT TO AVOID: INTERSTATE COMMERCE LAW. Facts
pleaded and proved and instructions given and reviewed, and *held*
not sufficient to raise a Federal question.

*Transferred from Kansas City Court of Appeals.*

REMANDED.

J. D. SHEWALTER and S. N. WILSON for appellant.

(1)   A suit to enforce rights secured or arising out of the
Interstate Commerce Act involves a Federal question.   Len-
non v. Lake Shore, etc., 22 U. S. App. 561.   (2)   A ship-
ment from a point in one State to a point in another over sev-
eral lines, at a through rate, constitutes, "a common arrange-
ment for a continuous carriage and shipment," within the
meaning of the Act of Congress, and is regulated by the
Interstate Commerce Act, though one of the roads is located
entirely in one State.   Augusta S. R. Co. v. Wrightsville &
T. R., 74 Fed. Rep. 522; Railroad v. Int. Com. Com., 162 U.

S. 184; U. S. ex rel. v. Railroad, 82 Fed. Rep. 563.    (3) When two connecting lines unite in a through tariff they form for the connected roads a new and independent line, and the local rate, or tariff for local shipments, does not apply.    Railroad v. Osborn, 10 U. S. App. 430; Railroad v. Int. Com. Com., 162 U. S. 184.

WM. S. SHIRK for respondent.

MARSHALL, J.—This is an action for an alleged conversion of one mare, three colts and some smaller articles, of the alleged value of $930.80.    The controversy arose in this wise:  On the 29th of November, 1895, the plaintiff delivered the stock and articles to the Missouri, Kansas & Texas Railway Company, at Houston, Texas, and received from that company a contract of affreightment to transport the same to Sedalia, Missouri, and there to be delivered to the defendant company to be by it transported to Lexington, Missouri, and delivered to plaintiff, as consignee.    The plaintiff paid the first named company the charges, amounting to $45.50, which was the legal rate from Houston to Sedalia and likewise from Houston via Sedalia to Lexington..  When the stock arrived at Sedalia the agent of the first named company delivered the car belonging to said company which contained the stock, to the agent of the defendant, and did not give him a copy of the bill of lading, and instead thereof gave him what the witnesses term a "transfer sheet," which showed that the stock had been received by the M. & K. & T. Co. at Houston, Texas, to be delivered to plaintiff at Lexington, Missouri, and recited that "Total Freight and charges paid," which is explained to mean that the charges of the M., K. & T. Co. had been paid for transportation as far as Sedalia, and did not indicate that the M., K. & T. Co. had collected anything for defendant's carriage of the stock from Sedalia to Lexington. The defendant carried the stock to Lexington, where it arrived

on the evening of the 3d of December, and defendant's agent failing to find the plaintiff that evening, the stock remained in the car until the next day. On the morning of the 4th of December, about 9 or 10 o'clock, the plaintiff called for his stock and property. The defendant's agent demanded $12.25, its local rate, for freight, from Sedalia to Lexington, before he would deliver the stock. The plaintiff refused to pay it, and claimed that he had prepaid all charges at Houston for the carriage of his property to Lexington, but upon the agent asking to see the contract of affreightment, he did not exhibit it. The agent then offered to deliver the property at once, if plaintiff would agree to pay the charges if upon investigation it turned out that they had not been paid, but this the plaintiff refused to do, and gave the agent until twelve o'clock that day to deliver the property, or he would sue for its value. The plaintiff waited until after four o'clock, and the property not having been delivered he began this action. The petition alleges the delivery to the M., K. & T. Co. at Houston; the contract of that company to transport to Sedalia over its road and "thence over the Missouri Pacific to Lexington, Mo., in a car belonging to the M., K. & T. Co.;" the pre-payment of the charges from Houston to Lexington; the conversion of the property by the defendant; and its value. The answer is quite lengthy, and set up in detail the facts above stated, with the addition, that on the 5th of December the M., K. & T. Co. corrected the "transfer sheet" so as to show that it had collected from plaintiff the sum of $12.25, to cover defendant's freight charges from Sedalia to Lexington (which it afterwards paid to defendant), and thereupon the defendant offered to deliver the property to plaintiff, free of charge, if he would dismiss his suit, which plaintiff refused to do, and the defendant then placed the stock, first, in a livery stable and, afterwards, in a pasture, from which the mare, the most valuable part of the property, escaped and returned to plaintiff, and was in his possession at the time of the trial. The

reply, which is also in detail, sets out plaintiff's account of what took place between him and the agent of the defendant at Lexington, and avers that defendant can not be heard to plead innocence or ignorance of the contract he made with the M., K. & T. Co., because it was its duty to know and because it ratified it by afterwards, with full knowledge, accepting $12.25, its charges, from the M., K. & T. Co., which he alleges was an illegal exaction, and further avers that the charges of the defendant and its refusal to deliver the property until the charges were paid was "a fraudulent scheme and device of the defendant to evade the Interstate Commerce Law, and the schedule of tariff or freight rates fixed thereunder, for the purpose of charging illegal fees and was not made honestly or in good faith."

The evidence further showed that the whole trouble arose from the act of the agent of the M., K. & T. Co., at Sedalia, changing the original way-bill by striking out Lexington as the final destination, and inserting in lieu thereof Sedalia, and in not disclosing to the defendant the fact that the charges had been prepaid to Lexington, as it should have done.

The court submitted the case to the jury on six instructions given for the plaintiff and eight given for the defendant. The second instruction given to the jury at the request of the plaintiff covered, fully and fairly, the question raised by the reply as to whether the charges demanded by the defendant before delivering the goods was a scheme and device of the defendant and the M., K. & T. road to evade the lawful rate and to collect an additional charge, and directed the jury that if such was the fact, the plaintiff was entitled to a verdict, and further told the jury that fraud is rarely susceptible of direct proof but could be proved by facts and circumstances, and that the jury must take into consideration all of the facts and circumstances detailed in the evidence, in determining

whether there was such a fraudulent scheme or device by the defendant.     This instruction was given just as plaintiff prepared it.

There was a verdict for the defendant, and after proper steps the plaintiff appealed to the Kansas City Court of Appeals, which court transferred the case to this court on the ground that the cause involves a constitutional question, which is stated in the opinion to be that the plaintiff assails the third and sixth instructions given at the request of the defendant because they "were in their enunciation at variance with the Act of Congress of the United States entitled ·'An Act to Regulate Commerce,' approved February 4, 1887, and commonly known as the 'Interstate Commerce Law.'"

I.

This court has no jurisdiction in this case.     If it be conceded that the plaintiff has invoked the protection of the Interstate Commerce Law, by pleading in his reply to the defendant's answer showing good faith on its part, that it was a scheme and device to evade that Act so as to exact illegal fees from him, still he has not been denied the protection of that Federal statute in this case, but on the contrary that protection has been accorded to him in the very terms asked by him, in the second instruction given at his request, and the law having been properly declared by the court, it left only the question of fact to be found by the jury, and upon the record before us, the jury reached the only conclusion the evidence warranted that there was no scheme or device to evade the provisions of the Federal statute, but a mistake made by the agent of the Missouri, Kansas & Texas Railway Company, at Sedalia, in. billing the car to the defendant, and that the defendant had acted in good faith, and the good faith of the defendant on the question of conversion is the only matter covered by the third and sixth instructions given

at the request of the defendant, upon the faith of which this case was transferred to this court. These instructions are as follows:

"3.    Although the jury believe from the evidence that plaintiff contracted with the Missouri, Kansas & Texas Railway Company to ship his horses and other property described in his petition, from Houston, Texas, to Lexington, Mo., by way of said Missouri, Kansas & Texas railway to Sedalia, Mo., and from thence to Lexington, Mo., over the Missouri Pacific railway, and that he paid to said Missouri, Kansas & Texas Railway Company not only the freight charges over its said road, but also the freight charges over the Missouri Pacific railway, yet if the jury further believe from the evidence, that at the time said property arrived in Sedalia, the agents of said Missouri, Kansas & Texas Railway Company turned the same over to the Missouri Pacific Railway Company, to be by it forwarded to Lexington, Mo., with the information that the freight charges had only been paid to Sedalia, and that said Missouri Pacific Railway Company at the time had no knowledge or information to the contrary, then it had the right to charge its legal freight charges for transporting said goods from the city of Sedalia to the city of Lexington and was not bound to deliver said goods to the plaintiff until such freight charges were paid, or until it had a reasonable opportunity to ascertain whether its freight charges had in fact been paid, and if the jury find from the evidence that defendant's agent at Lexington, Mo., did not intend at the time he demanded payment of the freight, to convert said horses to his own use, or to the use of the railway company, but only intended to hold the same for the collection of such freight charges, or until he could definitely ascertain whether the freight charges had been paid through to Lexington, then defendant was not guilty of a conversion of said property and the jury must find for the defendant.

"6.    The court instructs the jury, that although the jury may believe that the plaintiff had paid the freight charges. from Houston, Texas, to Lexington, Mo., to the Missouri, Kansas & Texas Railway Company and that the Missouri, Kansas & Texas Railway Company when said property arrived at Sedalia, did not so inform the defendant's agent at Sedalia,. but on the contrary delivered said property to the defendant at Sedalia for transportation to Lexington, with the informa-- tion that the freight had only been paid to Sedalia, and thereupon the defendant did transport said property from Sedalia, Missouri, to Lexington, Mo., with direction to the agent at Lexington to collect there its legal freight charges, then defendant's agent had the right to demand payment of its freight charges before delivering said property to the plaintiff and was not bound to take the plaintiff's mere statements as true that he had paid the freight charges clear through, to the Missouri, Kansas & Texas Railway Company, and he had a right to hold said property for a time reasonably sufficient to enable him to ascertain if its freight charges had been paid to the Missouri, Kansas & Texas Railway Company, and by said Missouri, Kansas & Texas Railway Company to the defendant."

In no sense whatever do these instructions deny to the plaintiff the protection of the Interstate Commerce Law, or relate to that law at all.    And the same is true of all the other instructions given at the instance of the defendant.    The plaintiff's contract was made at Houston, Texas, with the Missouri, Kansas & Texas Railway Company.    The defendant had no knowledge of its terms except as informed by that railway company and as stated to it by the plaintiff.    There was a discrepancy between the facts so stated by those parties. These instructions simply declare that the defendant had a. right to hold the freight for a reasonable time to ascertain the truth, and to demand or not demand freight from the plaintiff as the facts warranted.    There is not a suspicion in.

either of them of any relation to the Interstate Commerce Law. Moreover the motion for a new trial is not in any way, expressly or impliedly, based upon error of the court in giving these instructions because they violate that Federal law, nor, in fact, does that motion claim that the rights of the plaintiff under that statute have been denied or in any way affected or abridged by the action of the trial court in this case. Nor was any such question raised by the motion to strike out the portion of the defendant's answer which asserted the good faith of the defendant, substantially as stated in these instructions, but on the contrary the motion asked to have those averments stricken out of the answer, "for the reason that the same is irrelevant and constitutes no defense, as defendant, having accepted the freight, is bound to know the terms of shipment and having afterwards accepted payment from the M., K. & T. ratified what was done." This raises a question of estoppel by matters occurring after the suit was brought, which were unknown to defendant when the suit was brought, but it in no way raises a Federal question.

It has frequently been decided that to give this court appellate jurisdiction on the ground that the case involves the construction of the Constitution of this State, the record must show that the point was raised in the trial court and the protection of the Constitution claimed by the losing party was denied him. [Parlin & Orendorff Co. v. Hord, 145 Mo. l. c. 119; Hulett v. Railroad, 145 Mo. 35; James v. Ins. Co., 148 Mo. l. c. 18.] And the same is true as to Federal questions. [Vaughn v. Railroad, 145 Mo. l. c. 57; Sayward v. Denny, 158 U. S. l. c. 184; Oxley Stave Co. v. Butler Co., 166 U. S. 648.]

In this case no Federal question was properly or fairly raised, and no Federal rights were denied to the plaintiff by the trial court. The only matter relied on by plaintiff, in anywise referring to a Federal law, to wit, that there was a scheme or device to evade the Interstate Commerce Law was

submitted to the jury in the very words asked by the plaintiff, and the jury found the facts against the plaintiff. The defendant did not deny any of plaintiff's rights under the Constitution of the United States or any law passed pursuant thereto, nor call in question any such law.

Plainly, therefore, this case does not involve the construction of the Constitution of the United States nor is the validity of a treaty or statute of or authority exercised under the United States drawn in question, as is necessary, under section 12 of article VI of the Constitution, to confer appellate jurisdiction on this court, neither are the third or sixth instructions at variance with the Interstate Commerce Law, and therefore, this court has no jurisdiction in this case, except to remand it to the Kansas City Court of Appeals, which is accordingly done.

All concur.