## SHELL v. MISSOURI PACIFIC RAILWAY COM-
PANY, Appellant.

### Division Two, March 19, 1907.

**APPELLATE JURISDICTION: Constitutional Question: Eliminated
From Case.** Where all the constitutional questions raised in
the pleadings were entirely eliminated from the case at the
trial and there was no constitutional question to pass upon and
none was passed upon, and none was raised in the motion for
new trial, the raising of such questions in the pleadings alone
will not give the Supreme Court jurisdiction over the appeal.

Transferred from Kansas City Court of Appeals.

REMANDED TO KANSAS CITY COURT OF APPEALS.

*Jno. A. Davis* with *R. T. Railey* for appellant.

*Cole, Burnett & Moore* for respondent.

GANTT, J.—This appeal has been certified to this court by the Kansas City Court of Appeals. The action was commenced in the circuit court of Barton county by the plaintiff for damages resulting from the loss of a bay mare, which had strayed upon the defendant's right of way on account of a defective cattle-guard, and was injured and died under the following circumstances: While said mare was on said right of way, which was fenced, the defendant's servants while operating a hand-car, and by exertions and noise intentionally made by them for the purpose, frightened said mare and caused her to run against the right of way fence, by reason of which she was injured and died from her injuries.

The animal was valued at one hundred and twenty-five dollars. The petition prayed for double damages together with a reasonable attorney's fee.

The answer of the defendant contains, first, a general denial, and then proceeds as follows: "Defendant for further defense states, that sections 1105, 1106, 1107, 1108 and 1109, Revised Statutes of Missouri of 1899, under which this suit is attempted to be brought, are in conflict with the Constitution of Missouri, as well as the Constitution of the United States, in that, first, said sections are in conflict with section 10, article 2, of the Constitution of the State of Missouri, 1875, in this, that 'right and justice should be administered without sale, denial or delay.' Second, said sections are likewise in conflict with section 20 of article 2 of the Constitution of Missouri, 1875, in this, that they authorize the taking of private property for private use, without the consent of the owner. Third, said sections are in conflict with section 21 of article 2 of said Constitution, in that, they authorize the

taking of private property for public use without compensation. Fourth, said sections are in conflict with article 5 of the amendments to the Constitution of the United States, in this, that they deprive said defendant of its property without due process of law. Fifth, said sections are in conflict with article 5 of the amendments to the Constitution of the United States, in this, that they authorize the taking of private property for public use without compensation. Sixth, said sections are in conflict with article 8 of the amendments of the Constitution of the United States, in this, that they impose a cruel and unusual punishment upon the defendant herein. Seventh, said sections in allowing double damages and attorney's fees, are unjust, oppressive and contrary to public policy, constitute class legislation and discriminate against railway companies.''

To this answer there was a reply consisting of a denial of the new matter. The cause was tried at the January term, 1903, and resulted in a verdict in favor of the plaintiff for one hundred and twenty-five dollars, and judgment accordingly. Motions for new trial and in arrest of judgment were filed in due time and overruled and exceptions saved.

The following facts, we are advised by the appellant, the defendant in this case, stand uncontradicted in the record: Plaintiff was the owner of the mare in controversy, and she was worth one hundred and twenty-five dollars at the time of the injury. The defendant at the time of said injury and for several years prior thereto, was operating a railroad through Barton county, Missouri. Said road passed through the northwest corner of section 24 of LeRoy township, in said county, and through section 23 of said township in a southwesterly direction. During the period aforesaid, there was a public road running along the east side of said section 23, and defendant's road crossed this public road, and at the place where it

crossed it had for some time previous attempted to maintain a cattle-guard hereinafter mentioned. For some time prior to April, 1902, defendant had its right of way through said section 23 fenced with a good barbed-wire fence, with sufficient posts, etc., so that it became a lawful fence. Some distance south of said cattle-guard the defendant maintained a culvert over which its road passed, which was several feet deep. It likewise maintained fences on each side of said culvert running from the parallel fence on each side of said culvert, so that stock could not get through the same. There was likewise a fence from the parallel fence on each side running up close to said cattle-guard. The evidence tends to show that this cattle-guard was built on the surface of the ground, without any pit having been dug under it, and was constructed by eight strips being laid lengthwise between the rails and by four strips put down the same way outside of each rail. The evidence further tends to show that horses could pass over said cattle-guard, and that for several months prior to the accident one of the strips on the outside of the rail had been broken, was unsound and had been removed so that there was a space of twelve or fourteen inches without any strips, and over which space horses could travel without any inconvenience on to the defendant's right of way. That plain-tiff's mare had been in a pasture west of and adjoining defendant's right of way along said section 23, and had been seen in said pasture by plaintiff about one week before the accident, with his other horses in said pasture, but had not been seen any more until after the accident. The evidence does not show how, where or when plaintiff's mare escaped from said pasture, but she was running at large the time she passed over the cattle-guard aforesaid. On the 14th of April, 1902, plaintiff's mare passed over the cattle-guard aforesaid, and started down the defendant's track toward said culvert. Some of the defendant's section men came along

with a handcar traveling south, some distance behind said mare. After the section men got about half way between said cattle-guard and the culvert, said car was stopped and the men alighted therefrom. One of them stood on each side of said embankment while the other two passed south along the east side of the embankment where they were cut off from the view of the said animal until they came to the culvert, and then came in on the south side of the right of way for the purpose of driving the mare back over the cattle-guard through which she had passed in coming onto said right of way. After these section men had gotten behind the animal and while she was trotting along, she suddenly stopped when about one hundred feet from the culvert, and about three hundred feet from the hand car, and on seeing the horses in the adjoining pasture with which she had been in the habit of running, she plunged through the barbed-wire fence, and her throat was cut and she shortly afterwards died from the effect of her injuries thus received. The circuit court at the trial ruled that there was no evidence that the defendant's servants, the section men, were guilty of any negligence in handling said handcar or in attempting to drive said animal out. The case was submitted to a jury under the following instruction:

"If you shall believe from the evidence that the cattle-guard referred to in the testimony was not reasonably or ordinarily sufficient to prevent horses from passing over or through the same onto defendant's railroad and right of way, and that by reason thereof plaintiff's mare did pass over and through the same onto defendant's railroad and right of way, and that said railroad and right of way were then enclosed with wire fences so that said mare could not safely escape therefrom except by returning to and over said cattle-guard, and that, while said mare was so enclosed on said railroad and right of way, she became frightened at the appearance of and the noise ordinarily made by the

defendant's handcar while the same was being oper-
ated and run by defendant's section hands on said rail-
road, and that while so frightened, and by reason there-
of, said mare threw herself upon or against one of de-
fendant's said wire fences and that she was thereby
killed, then you should return a verdict in favor of the
plaintiff. Unless you do so believe, you should return
a verdict in favor of the defendant.''

The defendant offered no evidence and asked no
instructions, except a demurrer to the evidence. In his
brief filed in the Kansas City Court of Appeals, and
upon which the case was argued in this court, the learn-
ed and industrious counsel for the defendant makes not
the slightest reference to any constitutional question
and makes no complaint of any ruling of the circuit
court wherein the circuit court decided any constitu-
tional question against him. The circuit court was
not called upon to pass upon the constitutionality of
either section 1105 or 1106, Revised Statutes 1899. The
plaintiff on his part did not ask the court to hold either
of said sections constitutional, nor did the court do so,
either at his request or of its own motion. The court
in its instruction did not permit the jury to double the
damages, nor did it do so in its own judgment, and up-
on the reading of the judgment of the court and its
instruction, it cannot be said that the court treated the
petition of the plaintiff as one stating a cause of action
either under section 1105 or section 1106. Moreover,
in his motion for new trial no reference whatever is
made to the constitutionality or unconstitutionality of
either of said sections. In a word, it seems perfectly
obvious to us that all the constitutional questions raised
in the answer of the defendant were entirely eliminated
on the trial of this cause and there was no constitutional
question to pass upon. This court has repeatedly rul-
ed that in order to give this court jurisdiction of an
appeal on the ground that a constitutional question is
involved, it must appear that such question was raised

in the trial court and ruled to the disadvantage of the party appealing. [Bennett v. Railroad, 105 Mo. 642; Ash v. Independence, 145 Mo. 120; Shewalter v. Railroad, 152 Mo. 544; Hardin v. Carthage, 171 Mo. 442, and numerous other cases to the same effect.] Accordingly, it must be held that this court has no jurisdiction of this appeal and it is ordered that the record herein be transferred to the Kansas City Court of Appeals.

*Fox, P. J.,* and *Burgess, J.,* concur.