## ANNIE WING et al., Appellants, v. FRANK HAVELIK, Jr.

### Division Two, December 9, 1913.

1. **DEED: Evidence: Grantor's Mental Condition.** Evidence in an action to set aside a deed *held* sufficient to show that the grantor was of sound mind.

2. ———: ———: **Grantee: Undue Influence.** Evidence in an action to set aside a deed *held* not to show any undue influence exerted by the grantee or his wife.

3. ———: **Consideration: Agreement to Care for Grantors.** An oral contemporaneous agreement by the grantee to care for the grantors when past caring for themselves, and its performance, is sufficient consideration to support a conveyance of real estate.

4. ———: **Undue Influence: May be Exerted by Whom.** Undue influence is not only that exerted by the beneficiary; a deed may be set aside when obtained by undue influence exerted by a person other than the grantee.

5. ———: ———: **Exerted by Weaker Mind: Evidence.** Evidence in an action to set aside a deed from parents to a son on the ground that the father's will was overcome by that of the mother, who was not of sound mind, *held*, not sufficient to establish undue influence.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett, Judge.*

AFFIRMED.

*Frank Howell* and *William A. Dudley* for appellants.

(1) The deed is the direct product of undue influence, duress and fraud and should be set aside. 1 Page on Contracts, secs. 204, 322; Bishop on Contracts, sec. 719; Smith on Fraud, sec. 103; Dingman v. Romine, 141 Mo. 466; Meier v. Buchter, 197 Mo. 91; Mann, Medical Jurisprudence of Insanity, p. 161. (2) Even though Frank Havelik, Jr., had no knowledge of the

influences that operated on the parties to induce the conveyance to him, there being no consideration, the conveyance was void and should be set aside. Ranken v. Patton, 65 Mo. 378; Roberts v. Bartlett, 190 Mo. 702; Nottidge v. Prince, 2 Gifford, 246; Huguenin v. Baseley, 14 Vesey, Jr., 273; Fowler v. Butterly, 78 N. Y. 71; Sheperherd's Touchstone, 61; Caspiri v. Church, 82 Mo. 649; Thompson v. Hawks, 14 Fed. 902; 1 Page on Contracts, 472; Harris v. Carmody, 131 Mass. 51.

*R. H. Norton* and *Avery, Young & Woolfolk* for respondent.

ROY, C.—This is a proceeding to nullify a convey-ance on the ground of unsoundness of mind

**Action to Set Aside Deed.** and undue influence.

Frank Havelik and wife, Kate, were Bohemians, not understanding English. They had four children, Frank, Jr., Mrs. Krieger, Mrs. Annie Wing and Mrs. Schromek; the latter being dead, leaving one child, Mrs. Anderson. All were made par-ties to this proceeding.

In January, 1883, the parents were living on a farm of about one hundred and forty acres, worth not exceeding twelve hundred dollars. They lived in a two-room log house. Frank, Jr., was young and had been hired out. He married at that time and went to live with his parents on the farm, and received a deed from them for the land, which provided that all parties thereto should live in the dwelling on the land during the life of the grantors, who should be paid one-third of all the grain raised on the place.

Disagreements arose, and in the following Sep-tember the parents built and moved into another house on the farm. Disagreements continued, and after some time Frank moved away. After several years he moved back and remained until 1889. The troubles

continuing, he made a conveyance of the land to his father and Mike Vocum, a brother of his mother, who lived on the farm. The deed expressed a consideration of four hundred dollars. Frank then bought a place twelve miles distant, to which he moved his family.

Mrs. Wing testified as follows: "I reckon my uncle had money in the place, over half of it, wasn't more. He got it in the place, in St. Louis, in lots and buildings, when that was sold my pa kept the money and never give him any of it; they would borrow money and never give it back. It went into the farm, that's how come it to be his home as long as he was living. They bought the place from Frank, paid him $400 for it. A long time ago father and mother made Frank a deed to it; about 1882. He got the farm for the support of my parents as long as they were living —they did it the same month he got married, in January, don't remember what year. Lived there mighty little before he was married; he was hired out. Frank, my brother, deeded it back to father and Mike Vocum in 1889. Frank got it from them and deeded it back to father and uncle. They didn't get along well and Frank deeded it back. He had one child when they left. Frank had the place—they couldn't get along. Joe Shelker married one daughter and he moved there and Frank moved on his place. Joe staid until he got tired of waiting on my parents and went to his own farm and Frank moved back. I don't know how many years they lived there, they couldn't get along and pa bought the place back, I lived with father first year I was married. Frank was a little boy then. They wanted to deed us the farm. We was young folks and wouldn't take it. Frank said he was going to sell it back, and he did so and went off where he is now. Don't remember the year Frank made the deed back to father and uncle. Father paid $100 and

uncle paid $300. Heard that from my father and uncle.''

In 1897 the parents and Vocum reconveyed to Frank for the expressed consideration of $230. No money was paid. That deed contained a provision that the grantors should occupy the dwelling during their natural lives.

Mike Domaclky testified that three times pior to the making of that deed, the father came to him to get him to induce Frank to take a deed to the land, saying that he knew his son Frank was swindled, and that he wanted to fix it; that they had done Frank what wasn't right and they wanted to correct it; that Frank had done lots of work on the land and they wanted to give him a deed back to the property. He further testified that the deed was made upon an agreement talked over at the time that the old folks should take care of themselves as long as they could and then Frank would assist them. He testified that the father was of sound mind.

Frank Martinek was present at the making of the deed at the request of the elder Havelik and testified that Havelik was of sound mind.

Joe Martinek and his wife and Mrs. Annie Martinek and Mrs. Wing and daughter, Mrs. Chaney, all testified that Mrs. Kate Havelik was subject to short spells, during which she imagined that she was bewitched by her son Frank and his wife, and was very wild and irrational, imitating cries of various animals and cursing and abusing her husband; that she often importuned her husband to make a deed to the land to Frank, so that Frank and his wife would relieve her of her troubles.

Mrs. Joe Martinek testified that Mr. Havelik said that his wife was hard to do anything with; that she wanted him to deed the property to his son, so she would get rid of that trouble and that sickness; that

she was mean to him, hard on him and he could not get along with her.

Mrs. Chaney testified that her grandmother had those spells five or six years before the deed was made and that she frequently sent her husband to induce Frank to take a deed for the place; that he didn't want to go and that he believed his wife was bewitched.

Mrs. Wing testified that her father believed that her mother was bewitched by Frank and his wife and that on two occasions she prevented him from drowning himself because of his troubles with her.

Frank Knizel, in regard to the senior Havelik's mind, testified as follows: "Well, the fact is I couldn't decide on that matter. I said once I thought there was certain delusions the old lady had that was working on his mind; they worked on his mind and he had no thought of anything else; other times I thought he was as bright a man as any at his age."

Joseph Martinek testified that Mrs. Havelik said that Frank's wife was the cause of her trouble, and that she kept after the old gentleman to give the land back to Frank, so that would cure her. That Mr. Havelik would sometimes think she was bewitched and sometimes would talk like he thought she wasn't; that he was a sensible, smart man, but could not write.

Frank Havelik, senior, died in 1900. Mr. Vocum died the following year. After the death of Mr. Vocum, Frank took his mother and cared for her until her death in 1906.

The petition alleges that the minds of the elder Haveliks were unsound, and that Mrs. Havelik imagined she was bewitched by Frank and his wife and that they could relieve her of such trouble, and that they would do so provided the land was conveyed to Frank. The petition then continues as follows:

"And she thereupon so importuned and persuaded Frank Havelik, Sr., to so convey said land and give

the same to her said son, the defendant, that he by reason of his old age and feeble mind also became possessed of the belief so entertained by said Katherine; that said Frank Havelik, Jr., knowing all of the aforesaid facts, fraudulently intending to procure said land for himself without consideration, and to cheat and deprive said Frank Havelik, Sr., and Katherine Havelik of their interest in said land and to cheat and defraud these plaintiffs of their apparent interest, as heirs of said Frank Havelik, Sr., fraudulently encouraged and promoted the delusion and belief aforesaid of his parents and by means thereof and of undue influence, duress and force exerted by him and his wife fraudulently induced them to make and execute a deed conveying to him the lands aforesaid.''

The evidence conclusively shows that the mind of Frank Havelik, Sr., was sound, and there is no evidence tending to show that the defendant or his wife exerted influence of any kind to procure the deed.

The original petition alleged that the deed of 1897 was executed by Havelik and wife. During the trial the petition was amended by inserting the allegation that Vocum was one of the grantors. The pleadings make no showing as to who were the heirs of Vocum. We shall treat the case as one to set aside a conveyance of an undivided half of the property. At the close of the plaintiff's evidence, the court found for the defendant and dismissed plaintiff's bill and they have appealed.

The evidence is almost all in favor of the soundness of the mind of Frank Havelik, Sr., and we agree with the trial court that he was of sound mind. The question as to whether Mrs. Kate Hevelik was competent to make a deed need not be considered, as her interest in the land died with her.

**Evidence: Grantor's Mental Condition.**

The plaintiffs utterly failed to make a case of undue influence on the part of the defendant or his wife as charged in the petition. However, they have chosen to brief the case in this court on the theory that the petition charged undue influence exerted by Mrs. Kate Havelik over the mind of her husband, and we shall so consider it.

I. Appellants say that even though the defendant had no knowledge of the influence that operated on the parties to induce the conveyance to him, there being no consideration, the conveyance is void and should be set aside.

**Consideration.** It appears in this case from the evidence introduced by the plaintiffs that there was a consideration for the deed. Frank orally agreed at the time that when the old people could not care for themselves he would assist them. After the death of his father and uncle, in accordance with his agreement, he took his mother and cared for her until her death.

**Undue Influence.** II. It may be conceded that a deed will be set aside when obtained by the undue influence of a person other than the grantee. [Dingman v. Romine, 141 Mo. 466.]

In this case it is contended that undue influence was exerted by Mrs. Havelik, one of the grantors. 39 Cyc., p. 681, defines undue influence as "A coercion produced by importunity, or by a silent, resistless power, which the strong will often exercises over the weak and infirm, and which could not be resisted, so that the motive was tantamount to force or fear; whatever destroys free agency, and constrains the person whose act is brought in judgment to do what is against his will, and what he would not have done if left to himself; that which overpowers the will without convincing the judgment; an influence which acts to the

injury of the person who is swayed by it, or of those whom he would, if left to himself, have benefited."

In Dingman v. Romine, supra, l. c. 474, it was said: "Any influence, however exercised, which destroys free agency and substitutes the will of another for that of the person in whose name the act brought in judgment is done is undue or wrongful."

The contention of the plaintiffs herein is unusual and peculiar in this: They contend that the will of the husband was overcome by that of his wife who is conceded to have been of unsound mind. They claim that the strong was overcome by the weak, that his will was overcome by one who had no rational will.

We do not hold that in no case can the instrument be set aside because of undue influence by the weaker upon the stronger. We are of the opinion that the trial court was right in finding for the defendant on the merits.

Mrs. Wing's testimony shows that as early as 1883 her parents offered her a deed to the property. Their purpose in making such offer was doubtless the same as that entertained by them when they made the first deed to Frank. Neither of them was then of impaired intellect. It seemed to be a continuous desire on the part of the parents to convey the farm to one of their children for the support of the grantors in old age. Frank conveyed the farm back to his parents in 1889 and reluctantly accepted the deed of 1897. The testimony of Mike Domaclky showing that the father insisted upon repairing the wrong done to his son by making the last deed and that such deed was made upon Frank's agreement to care for the grantors cannot be ignored. It was introduced by the plaintiff. It is consistent with the father's conduct for fourteen years prior thereto. We are impressed with the fact that the uncle also joined in making that deed. No undue influence is alleged or proved as to him. It is not charged that he was of unsound mind.

State v. Gordon.

This is a case where much deference should be shown to the finding of the trial court. The witnesses were present and testified, and their demeanor was observed by the chancellor. We are satisfied that his finding and decree are right, and affirm the judgment. *Williams, C.*, concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.

---

## THE STATE v. SIDNEY GORDON, Appellant.

### Division Two, December 9, 1913.

1. **LARCENY: Evidence: Showing Defendant's Presence.** Where in a prosecution for grand larceny the evidence tended to show that defendant boarded a street car, pulling and pushing a great deal, and meanwhile took a passenger's pocketbook from his hip pocket, there was no error in admitting testimony that a few minutes before that time, and near the same place, defendant had pushed in between the witness and his father on the platform of another car. The evidence was properly admitted for the purpose of showing defendant's presence at or near the scene of the crime a short time prior to its commission, and it is not sufficient objection to say that it might prove the commission or attempted commission of another crime.

2. ————: **Argument: Remarks of Prosecutor: Within the Record.** Although such conduct is not to be commended, it was not error for the prosecutor, where the evidence tended to show that defendant was guilty of larceny and was not a resident of that city, to call defendant in his argument "a foreign thief."

3. ————: ————: ————: **Defendant's Failure to Testify.** Where a witness for the State in a prosecution for grand larceny was not present, but his testimony at a previous trial was introduced by consent, it was not error for the prosecutor to say in his argument: "[The witness] was not able to be here and we had to introduce his testimony and that testimony is conclusive and not contradicted by any evidence." The remark had no reference to defendant's failure to testify in his own behalf.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

AFFIRMED.

*W. Blodgett Priest* for appellant; *Matt. Holland, Chauncey H. Clarke* and *Otto Karbe* of counsel.

(1) The court committed reversible error in allowing William O. Schmidt, a witness for the State, to testify over defendant's objection as to what occurred between defendant and Schmidt's father before the offense in issue occurred, therein indicating and insinuating that defendant had committed, or attempted to commit a crime on the witness's father, as well as the offense in issue. State v. Speyer, 207 Mo. 543. (2) The prosecuting attorney was guilty of making unlawful remarks in his closing argument to the jury, which he was allowed to do by the court, over defendant's objection. These remarks were abusive, constituted an appeal to passion and prejudice, and imputed other and prior acts of thievery to the defendant, which were *dehors* the record, thereby constituting reversible error. State v. Fischer, 124 Mo. 464; State v. Lee, 66 Mo. 168; State v. Jones, 249 Mo. 80; State v. Phillips, 233 Mo. 306; Ferguson v. State, 44 Ind. 33.

*John T. Barker*, Attorney-General, and *S. P. Howell* for the State.

(1) Evidence was admitted showing that defendant had pushed and jostled other persons, but the jury was specifically instructed to disregard such testimony except for the purpose of showing defendant's presence in the neighborhood at the time the larceny is alleged to have been committed. Furthermore, evidence tending to show the commission of other offenses is admissible where the identity of the defendant is

one of the controverted questions before the jury. State v. Hubbard, 201 Mo. 641; State v. Spaugh, 200 Mo. 594; State v. Toohey, 203 Mo. 674; State v. Collins, 181 Mo. 260; State v. Jones, 171 Mo. 407; State v. Bates, 182 Mo. 70; State v. Bell, 212 Mo. 124; State v. Newman, 245 Mo. 498. (2) Remarks of Prosecutor. (a) The court did not err in failing to sufficiently rebuke the circuit attorney for stating in argument to the jury that: "Mr. Bischoff was not able to be here and we had to introduce his testimony, and that testimony is conclusive and not contradicted by any evidence." This remark, read in the light of the testimony given by the witness Bischoff was merely an expression as to the strength of the State's evidence. The circuit attorney was giving to the jury the resultant of all the evidence that had been submitted during the trial, and his statement is substantiated by the testimony adduced, namely, that the fact of the commission of the larceny, as testified to by Bischoff, was uncontradicted. It cannot be reasonably inferred that the remark was intended as a reference to the failure of defendant to testify in the case. This court has frequently held it permissible for prosecuting attorneys in argument to give a summary of the evidence to the jury, indicating the points disputed and those remaining uncontradicted, so long as such argument cannot, by reasonable inference be interpreted as a direct reference to defendant's failure to take the stand in his own defense. State v. Ruck, 194 Mo. 440; State v. Fields, 234 Mo. 625; State v. Preston, 77 Mo. 296; State v. Miles, 199 Mo. 551; State v. Faught, 140 Mo. App. 373; State v. Donaldson, 243 Mo. 478. (b) Evidence had been adduced to establish the larceny as charged, and that the defendant had but recently arrived in St. Louis from Chicago. Where evidence introduced forms the basis of and warrants the comment of counsel, it is not reversible error. State v. Dyer, 139 Mo. 199; State v. Griffen, 87 Mo. 615; State

v. Cummings, 189 Mo. 644; State v. Gartrell, 171 Mo. 511; State v. Rasco, 239 Mo. 579; State v. Jones, 249 Mo. 98; State v. Allen, 174 Mo. 698; State v. Ferrell, 246 Mo. 336; State v. Hilton, 248 Mo. 534.

