THE STATE ex rel. CITY OF ST. LOUIS v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

In Banc, December 31, 1914.

1. **CITY ORDINANCE: In Conflict with Statute: Retrospective: Viaduct: Public Service Commission: Suspension of Judgment.** A city ordinance requiring a railroad company to construct a viaduct or bridge over its tracks at a street crossing, at its own expense, is in conflict with the statute permitting the Public Service Commission to apportion the costs of the viaduct between the city and the railroad company; but the statute is a later enactment, and does not have a retrospective operation, and cannot be *held* to nullify a suit to enforce the provisions of the ordinance prosecuted to judgment before the enactment of the statute.

2. ———: **Suspension By Statute.** Whatever rights have been acquired by a city, and whatever has been legally done under its charter and ordinances, prior to the enactment of a statute, are beyond the power of the General Assembly to disturb by such statute.

3. ———: ———: **Rights Acquired By Violation of Ordinance.** If the city ordinance is valid and binding, the railroad company cannot gain any advantage by violating it. Where it appears that, if the railroad company had obeyed the ordinance requiring it to build a viaduct in a street crossed by its tracks, the viaduct would have been almost completed before the suit was brought to compel it to obey it, the courts will not listen with patience to its prayer that, as no actual work has been done on the viaduct and the later enacted statute permits the Public Service Commission to apportion the costs between the city and the company, said apportionment should be made by the courts.

4. **VIADUCT OVER STREET: Overhead or Under Tracks: Option.** Under the charter of the city of St. Louis the Missouri Pacific Railway Company does not possess an option to cause streets to pass over or under its tracks, and mandamus will lie to compel it to obey an ordinance requiring it to construct a viaduct over its tracks crossing a public street. In ordering the abolition of a grade crossing the city proceeds under the authority of its charter, which is an exception to the general statutes pertaining to the subject.

5. **ORDINANCE: Recital of Reasons for Its Enactment: Viaduct Over Street.** A legislative body need not recite the reasons which move it to enact a law. The law when enacted furnishes its own reasons. A railroad company cannot refuse to obey an ordinance requiring it at its own expense to construct a steel viaduct over its tracks at a street crossing for that the ordinance does not declare the existing grade crossing a public nuisance, or that it is dangerous, or states no reason for requiring a separation of grades at said crossing.

6. **VIADUCT AT STREET CROSSING: No Benefit District.** A railroad company is not justified in refusing to obey an ordinance of the city of St. Louis requiring it to construct at its own expense a steel viaduct over its tracks at a certain street crossing, because certain statutes intended to apply to cities of the first class require the establishment of a benefit district "to pay for the damages which may be caused to any property by reason of the construction of such subway or viaduct," and no such benefit district has been established; for, said city is not of the category of cities of the first class, but is organized under a special freeholders' charter authorized by the Constitution, and said statutes do not apply.

7. ———: **Title of Street: Admitted in Return.** The title to public streets is necessarily in the city; and if defendant in its return to the writ of mandamus, commanding it to construct a viaduct over its tracks at a certain street crossing, admits that the street was at all times a public street, it will not be heard to contend that the title to the street is in it.

8. ———: **Unreasonable Ordinance: Must Be Pleaded.** When a defendant wishes to avoid the provisions of an ordinance on the ground that they are unreasonable, the particular facts which render them invalid should be pleaded. A general allegation that the "ordinance is unreasonable upon its face, is unjust and oppressive, and was passed without due consideration and without affording defendant an opportunity to be heard," is not sufficient to authorize a court to hold that an ordinance requiring defendant to construct at its own expense a steel viaduct over its tracks at a street crossing is unreasonable.

262Mo46

9. **APPEAL:** Grounds Not Mentioned In Motion for New Trial. Constitutional objections to an ordinance set up in the answer, but omitted from defendant's motion for a new trial, will not be considered on appeal.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*James F. Green* for appellant.

(1) Under the Public Service Commission law the Public Service Commission is vested with exclusive jurisdiction as to the matter of the separation of grade crossings, and, nothing having been done under said ordinance providing for the separation of grades at Chouteau avenue, this proceeding instituted by the city should be dismissed. Elec. L. & P. Co. v. St. Louis, 253 Mo. 592; State ex rel. v. Gas Co., 254 Mo. 515; State ex rel. v. Superior Court, 120 Pac. 861; State ex rel. v. Railroad, 142 N. W. 185; Railroad v. Spokane County 134 Pac. 689; Emporia v. Tel. Co., 133 Pac. 858. (2) The city of St. Louis can pass no ordinance which is in conflict with the Constitution, statutes or common laws of the State. Secs. 16, 20, 22, 23 and 25, Art. 9, Constitution; City v. Hoblitzelle, 85 Mo. 78; St. Louis v. Dorr, 145 Mo. 477; St. Louis v. Kaime, 180 Mo. 321; St. Louis v. Meyer, 185 Mo. 591; St. Louis v. Klausmeier, 213 Mo. 125; St. Louis v. Wortman, 213 Mo. 131; Dillon on Mun. Corp. (4 Ed.), p. 145; St. Louis v. Dreisoerner, 147 S. W. 998. (3) The granting of a writ of mandamus is largely in the discretion of the court, and should never be issued in doubtful cases. State ex rel. v. Bridge Co., 206 Mo. 74; State ex rel. v. McIntosh, 205 Mo. 610; State ex rel. v. Buhler, 90 Mo. 560; State ex rel. v. Railroad, 77 Mo. 147; High on Extraordinary Remedies, sec. 9; Merrill on Mandamus, sec. 62; 2 Morawetz on Private Corporations (2 Ed.), sec. 1134; Tipping on Mandamus, secs.

324-327; 19 Am. & Eng. Ency. Law (2 Ed.), 751.   (4)
Under the charter of the city of St. Louis and the
statutes of Missouri prior to the enactment of the
Public Service Commission law, when it became nec-
essary to separate grade crossings, the railway com-
pany had the right to cause the street to go under or
over the railroad tracks. · The ordinance arbitrarily
requires the railway company to build a viaduct at its
own expense, ignoring the option given by said stat-
utes.   Secs. 3049, 3141, 10626, R. S. 1909; Van Note
v. Railroad, 70 Mo. 641; Turner v. Railroad, 78 Mo.
578; Terry v. Railroad, 89 Mo. 586; Pratt v. Railroad,
139 Mo. App. 511; People v. Railroad, 74 N. Y. 304;
Railroad v. St. Louis, 66 Mo. 228.   (5)  The ordinance
in controversy does not declare the crossing of Chou-
teau avenue with defendant's tracks a public nuisance;
nor does it declare that said grade crossing is dan-
gerous; it states no reason for requiring a separation
of grades at said point.   (6)  The ordinance is unrea-
sonable, because it does not require the city or the
street railway company to pay any portion of the ex-
penses incident to the construction of the viaduct, nor
any portion of the consequential damages.   Bd. of
Aldermen v. Railroad, 89 N. E. 438; In re Mayor of
Taunton, 70 N. E. 48; Detroit v. Railroad, 120 N. W.
603.   (7)  Relator seeks in this proceeding to compel
the railway company to assume and pay all of the
damages consequent upon the construction of the via-
duct, in contravention of the statute, which requires
the establishment of a benefit district "to pay for the
damages which may be caused to any property by rea-
son of the construction of such subway or viaduct and
its approaches."   Sec. 44, Laws 1911, p. 333; Sec. 8588,
R. S. 1909.

*William E. Baird* for respondent.

(1)  At the time of the passage of the ordinance,
February 28, 1911, the city of St. Louis undoubtedly

had the power to pass the ordinance in question, and to require a railroad company to abolish grade crossings. Tobacco Co. v. St. Louis, 247 Mo. 374. (2) The enactment of the Public Service Commission law, approved March 17, 1913, did not nullify the ordinance in question. Superior v. Roemer, 154 Wis. 345; Miller v. Railroad, 133 Wis. 183; Wells v. Remington, 118 Wis. 573; Elec. L. & P. Co. v. St. Louis, 253 Mo. 592; Dillon, Mun. Corps. (5 Ed.), sec. 235; State ex rel. v. Severance, 55 Mo. 386; Wills v. Railroad, 133 Mo. App. 625; E. St. Louis v. Maxwell, 99 Ill. 443; Wood v. Election Comrs., 58 Cal. 561; State v. Williams, 80 Tenn. 251. (3) While the granting of a writ of mandamus is largely in the discretion of the court, nevertheless, where the lower court has exercised its discretion and awarded the writ, the appellate court should not reverse the judgment unless it is clear that the lower court abused its discretion. State ex inf. v. Gas Co., 254 Mo. 515. (4) Neither section 3049 nor section 3141, R. S. 1909, permitting a railroad to make a road or street pass under its tracks, is a grant of power to the railroad. This provision of the law merely permits the railroad to make a street or road pass under its tracks, and is not a limitation upon the power of the city. It does not give an unconditional option to the railroads. People ex rel. v. Railroad, 177 N. Y. 337. Sec. 8588, R. S. 1899, as amended by the Act of April 11, 1911 (Laws 1911, p. 332), refers solely to cities of the first class, and therefore does not apply to the city of St. Louis. State ex rel. v. Mason, 153 Mo. 52; Kansas City v. Stegmiller, 151 Mo. 204; State ex rel. v. Mason, 155 Mo. 486. (5) It was not necessary that there should have been a finding by the Municipal Assembly of the fact that the grade crossing in question constituted a nuisance, nor that there should have been a declaration to that effect by the assembly or other municipal agency, or that the railroad should have received a notice of the intention to enact the

ordinance.   Young v. City, 47 Mo. 492; Kiley v. For-
see, 57 Mo. 394; Railroad v. Maguire, 49 Mo. 480; Har-
relson v. Railroad, 151 Mo. 482; Health Department
v. Trinity Church, 145 U. S. 32; Texas v. Interstate
Co., 155 U. S. 585.   (6) The question of reasonable-
ness of the ordinance cannot be discussed, for the rea-
son that the point was not properly raised by the
pleadings.   An ordinance may, indeed, be void for
unreasonableness, but the question can only be raised
by a proper statement of the facts in the pleadings
showing the ground of attack.   Conshohocken Bor-
ough v. Light Co., 29 Pa. Sup. 7; Bradford v. Jones,
141 Ky. 820; Neary v. Railroad, 41 Mont. 480; McQuil-
lin, Municipal Ordinances, sec. 327.

BROWN, J.—Mandamus to compel the submission
of plans for a public viaduct.   From a judgment for
plaintiff defendant appeals.

On February 28, 1911, the city of St. Louis, Mis-
souri, through its legislative department, duly enacted
an ordinance which required the defendant, at its own
expense, to construct a steel viaduct and approaches
thereto over defendant's railroad tracks where the
same cross Chouteau avenue, a public street of said
city.   This ordinance will hereafter be designated as
the viaduct ordinance.   The length, height, materials
and general description of the proposed viaduct are re-
cited in the ordinance.   It also contains the follow-
ing important provisions: (1) That within four months
after it becomes effective the defendant shall submit
to the Board of Public Improvements of plaintiff city
plans, profiles, detailed drawings and specifications
for the proposed viaduct and approaches thereto.   (2)
That within six months after the approval of said
plans, etc., by the Board of Public Improvements the
defendant must begin the actual work of constructing
the viaduct and complete the same within eighteen
months after the work is begun;   (3)   The failure to

perform any of the things required by the ordinance is declared a misdemeanor punishable by fine.

The defendant failed to submit plans, etc., to the Board of Public Improvements, as required by the viaduct ordinance, and on August 10, 1911, this action of mandamus was instituted to compel defendant to submit said plans, profiles, etc., for the proposed viaduct.

In its return to the alternative writ issued herein by the circuit court, the defendant admits that Chouteau avenue is and was at the time the viaduct ordinance took effect a public street of plaintiff city used by pedestrians and vehicles, and that defendant was operating its railroad across said street. In its return defendant has set up many constitutional and other alleged grounds why the alternative writ of mandamus should be quashed and no absolute writ issued. Some of these defenses were abandoned, but such of them as are properly before us for review will receive attention in connection with the conclusions we have reached.

Stipulations which form part of the evidence upon which the case was tried admit that the defendant's railroad tracks were constructed across the land where Chouteau avenue is now located before said avenue was opened as a public street; admit that the city has not created a district within which private property would be benefited by the construction of the viaduct, and that the defendant refused and still refuses to submit plans, etc., for the construction of the viaduct to the Board of Public Improvements of plaintiff city.

The oral evidence tends to prove that defendant maintains five or six railroad tracks across Chouteau avenue where the ordinance requires the viaduct to be constructed, and that there is a double-track street railroad of the United Railways Company on the same street. Also that upon one side of said street at the point where the ordinance requires the viaduct to be

constructed there is a stoneyard, a lumberyard, a roundhouse and a six-story packing plant; and upon the other side of said street a three-story boarding house and six residences, some of them two-story buildings and others one-story.

The defendant offered to prove that the proposed viaduct would cost more than $150,000, which evidence was objected to by plaintiff on the ground that it did not tend to prove any issue tendered by the pleadings, and on said objection was excluded. The trial resulted in a finding for plaintiff, and a judgment directing an absolute writ of mandamus as prayed. From that judgment this appeal is prosecuted.

I. The most difficult issue in this case arises on a motion by defendant to dismiss the cause, filed since the appeal was lodged in this court, on the ground that the Public Service Commission law, enacted by the Missouri General Assembly in 1913, is in conflict with the viaduct ordinance requiring defendant to construct the proposed viaduct and the approaches thereto, in this, that the Public Service Commission law permits said commission to apportion the costs of said viaduct between the city and the defendant, while the viaduct ordinance requires all of said expense to be borne by defendant.

**Motion to Dismiss: Ordinance: Suspension by Statute.**

It is perfectly apparent that the State law before mentioned is in conflict with the provisions of the viaduct ordinance upon which this suit is bottomed, and there is quite a respectable array of authorities which tend to support appellant's position that the viaduct ordinance was repealed by the enactment of the Public Service Commission law.

In State ex rel. Webster v. Superior Court of King County, 67 Wash. 37, it was held that a public service commission law of the State of Washington superseded an ordinance of the city of Seattle fixing tel-

ephone rates, and gave the commission the right to raise the rates previously fixed by city ordinance.

In Railroad Company v. Spokane County, 75 Wash. 72, it was held that a law of the State of Washington empowering a railroad commission to assess railroad property for purposes of taxation nullified an assessment made by officers of said county under a former law.

In City of Emporia v. Telephone Company, 90 Kan. 118, it was held that telephone rates fixed by a public utilities commission nullified and superseded rates previously fixed by an ordinance of the city of Emporia.

In the case of Union Electric Light & Power Co. v. City of St. Louis, 253 Mo. 592, it was held by the Missouri Supreme Court that an ordinance of the city enacted under the law of 1907 fixing rates to be charged for electric light was nullified by section 139 of the Public Service Commission Act of 1913, because said section effected a complete repeal of the law of 1907 and carried with it the ordinance enacted pursuant to its provisions.

In the case of Kansas City v. Clark, 69 Mo. 588, it was held that when a city repeals an ordinance under which a defendant has been convicted such repeal wipes out the crimes committed under the ordinance, and upon appeal a defendant charged with such crimes is entitled to his discharge.

There is no doubt that when the General Assembly enacts a law which is in irreconcilable conflict with a city ordinance theretofore enacted such ordinance is thereby repealed, but whether such a repeal nullifies acts done under a legal ordinance during the time it was in force and before the conflicting statute was passed raises a serious question. Where the power to remit fines, penalties and forfeitures accruing in favor of a city is vested in its mayor, a nice question would arise over the exercise of such power by a legislative body.

[State v. Grant, 72 Mo. 113.] But such an issue is not directly involved in this case as it is not an action for fines or penalties.

In the case of St. Louis v. Wortman, 213 Mo. 131, it was said by this court that the repeal of an ordinance of St. Louis city by the enactment of a State law in conflict therewith rendered it impossible to further prosecute one who had violated the repealed ordinance. In that case it was held that the ordinance upon which the prosecution was based was void because of its defective title, so that what was said about the effect of its repeal by a conflicting State statute may be treated as *obiter*.

However, notwithstanding the long array of authorities which, in some measure, tend to support the contention of appellant, we have concluded that its motion to dismiss the cause should be overruled for the following reasons:

To hold that the Public Service Commission act nullifies and wipes out the proceedings had and rights acquired under the viaduct ordinance we thus render the Public Service Commission act invalid under our organic law which expressly ordains that 'no law . . . retrospective in its operation . . . can be passed by the General Assembly.'' [Sec. 15, art. 2, Constitution of Missouri.]

In the early case of Stevens v. Andrews, 31 Mo. 205, it was held by this court that it was not within the constitutional power of the General Assembly to suspend execution on a judgment entered before the law allowing such suspension was enacted. Certainly if the General Assembly may not suspend the enforcement of a judgment valid when entered, it cannot destroy a judgment valid under the law at the time of its entry.

In the case of Cranor v. School Dist., 151 Mo. 119, it was said that a statute of limitation which would cut off or bar the right to revive a judgment already

legally entered was retrospective in its operation, and, therefore, invalid. In that case it was accordingly ruled that a statute which by its words appeared to have a retrospective effect would be construed as operating only prospectively. In the same case a well-known rule was repeated, that all laws should be construed propsectively, unless the intention to make them operate retrospectively is so clear as to leave no reasonable doubt on that subject. This last-named rule is entirely sound but need not be applied here, for the reason that there is nothing in the Public Service Commission law enacted in 1913 which in the remotest degree tends to give it a retrospective effect. The repealing clause of said act contains the following words: "The provisions of this act are not intended to repeal any law now in force, unless in direct conflict therewith, but is intended to be supplemental to such laws." [Sec. 139, Laws 1913, p. 651.]

To arrive at such an anomalous result as defendant contends for is to disregard another well-known rule of statutory construction, to-wit, that the intent of the lawmaker should govern. We have no reason for assuming that the General Assembly knew that the viaduct ordinance upon which this action is bottomed had been enacted by the city of St. Louis, much less that the action to enforce the rights acquired thereunder had been prosecuted to a judgment in the circuit court. Courts do not take judicial notice of city ordinances, and it would be an absurdity for us to hold that the General Assembly, sitting outside of the city of St. Louis, knew of the viaduct ordinance, or of said suit to enforce its provisions. Therefore, with nothing in the law indicating an intent to overturn the judgment below, we cannot read into the Public Service Commission act any such intention. It follows that the Public Service Commission law can only be held to operate prospectively.

Whether the charter provisions of the city of St. Louis in regard to the control of its streets were superseded by the Public Service Commission act is not necessarily before us, and we decline to express any opinion on that important subject at this time. However, we do hold that whatever rights were acquired by the city, and whatever was legally done under the charter of said city and the viaduct ordinance prior to the enactment of the Public Service Commission act, were beyond the power of the General Assembly to disturb.

This ruling is supported by the very recent case of City of Superior v. Roemer, 154 Wis. 345, in which it was held that the legislative body of Superior City having, under a right granted by the charter of said city, passed a resolution requiring certain railroads to construct at their own expense a viaduct over their tracks at Belknap street, in said city, and a copy of said resolution having been served upon the railroads before the General Assembly of Wisconsin created a public service commission, it was beyond the power of said commission to apportion any part of the costs of said viaduct to the city, for the reason that by the passage of said resolution and the service upon the railroad companies of a copy thereof the city was given a vested right to have the viaduct constructed at the expense of the railroads.

But says the appellant, as no actual work has been done under the viaduct ordinance, the Public Service Commission law should be applied so as to allow the apportionment of a part of the costs of the viaduct to the plaintiff city. This argument does not appeal to us as being sound. Defendant by its stipulations admits that it had ignored and refused to obey the provisions of said viaduct ordinance during a period of nearly twelve months following its enactment.

If the viaduct ordinance is valid, certainly a party who has violated its provisions is not entitled to gain

any advantage by such violation. If that ordinance had been obeyed the viaduct would have been well-nigh completed when this cause was instituted in the circuit court.

II. We pass not to the alleged errors of the trial court. Defendant earnestly insists that, under the general laws of Missouri (Secs. 3049, 3141 and 10626, R. S. 1909) as they existed prior to the passage of the

Viaduct Over
Street: Option:
Mandamus.

Public Service Commission act, it possessed an option to cause streets to pass over or under its tracks, and being thus vested with an option mandamus will not lie to compel the construction of a viaduct over its tracks.

This issue was before us in the recent case of American Tobacco Co. v. St. Louis, 247 Mo. 374, l. c. 434-5-6, to which case the present defendant was a party. In that action it was held that in ordering the abolition of a grade crossing the city was proceeding under authority of its charter which formed an exception to the general statutes hereinbefore referred to. In that case pretty much the same authorities were cited by defendant as in the case at bar, so that no good will be accomplished by referring to them again in this opinion. The conclusions announced in the American Tobacco case met with the approval of the members of this court sitting in Banc, and we are still satisfied therewith.

III. Another assignment is as follows: "The ordinance in controversy does not declare the crossing of

Reasons for
Ordinance.

Chouteau avenue with defendant's tracks a public nuisance; nor does it declare that said grade crossing is dangerous; it states no reason for requiring a separation of grades at said point."

No authorities are cited in support of this contention, nor have we found any that tend to support it. A legislative body need not recite the reasons which moved it to enact a law. The law when enacted furnishes its own reasons.

In Young v. St. Louis, 47 Mo. 492, it was held by this court, in substance, that the passage of an ordinance by a city was equivalent to an averment that the necessity for such ordinance had arisen. We have been unable to find any case which overrules or modifies the doctrine of the Young case, last cited, but we do find that it was expressly approved in Kiley v. Forsee, 57 Mo. 390, l. c. 394. This point will be ruled against defendant.

IV. A further contention of defendant is that "relator seeks in this proceeding to compel the railway company to assume and pay all of the damages consequent upon the construction of the **Benefit District.** viaduct, in contravention of the statute which requires the establishment of a benefit district 'to pay for the damages which may be caused to any property by reason of the construction of such subway or viaduct and its approaches.' [Sec. 44, Laws 1911, p. 333; Sec. 8588, R. S. 1909.]"

The point is also ruled against defendant, because the statutes cited show on their face that they were intended to apply to municipalities organized as cities of the first class. The plaintiff city is not in that category, being organized under a special charter as permitted by sections 16 and 20, article 9, Constitution of Missouri. [State ex rel. Hawes v. Mason, 153 Mo. 23, l. c. 52.]

V. In its argument at the bar of this court defendant insisted that the circuit court erred in awarding the writ of mandamus, because the fee simple title

**Title to Street** to the land where Chouteau avenue is located is vested in defendant. We do not think this issue is open to defendant in this appeal, for the reason that in its return (in the nature of an answer) filed below, it expressly admitted that Chouteau avenue was "at all times mentioned in plaintiff's petition a public street of plaintiff city." The title to the public streets of a city is necessarily vested in the city; therefore, the defendant could not be vested with the title thereto at the same time, and the admission before noted takes that issue out of the case.

VI. A final insistence of defendant is that "said ordinance is unreasonable, because it does not require the city or the street railway company to pay any portion of the expense incident to the construction of the viaduct, nor any portion of the consequential damages."

The only attempt on the part of defendant to present this issue in its pleadings is that part of its return which reads as follows: "Said ordi-
**Unreasonableness of Ordinance.** nance is unreasonable upon its face, is unjust and oppressive, and was passed without due consideration and without an opportunity being afforded to the property owners interested, as well as to this respondent, to be heard before the passage thereof."

It is undoubtedly true that an ordinance which is grossly unreasonable is void. Such was the unanimous ruling of this court in Banc in the American Tobacco Company case, 247 Mo. 374.

However, respondent insists that the alleged unreasonableness of the viaduct ordinance was not sufficiently pleaded to enable plaintiff to meet such a defense, and, therefore, the trial court properly excluded evidence on that issue. Plaintiff cites in support of this contention the case of Neary v. Railway Co., 41 Mont. 480, in which it was held that a railroad com-

pany could not introduce evidence tending to show that a speed ordinance upon which plaintiff relied to show negligence was unreasonable without pleading as a part of its defense the particular facts which rendered such ordinance unreasonable. Plaintiff also cites the following additional cases which sustain its position: W. Conshohocken Borough v. Light & Power Co., 29 Pa. Sup. 7; Bradford v. Jones, 142 Ky. 820; and McQuillin, Municipal Ordinances, sec. 327, p. 510.

The ordinances of a city are presumed to be legal and reasonable, and when a litigant seeks to avoid their provisions on the ground that they are unreasonable, the particular facts which render them invalid should be pleaded.

The only evidence offered to show the unreasonableness of the viaduct ordinance was that the proposed viaduct would cost "more than $150,000;" and even if that evidence had been admitted it alone would not have proven that the ordinance was in fact unreasonable.

If the defendant had offered evidence sufficient in quantity and quality to establish the fact that the viaduct ordinance was unreasonable, and if the trial court had received such evidence and found for defendant, quite a different issue would now be before us under the liberal provisions of our Missouri Code and Statute of Jeofails. This insistence is also ruled against defendant.

VII. In its answer defendant has urged numerous constitutional objections to the viaduct ordinance, but these defenses were abandoned in its motion for new trial, so that we are not called up-

**Abandonment of Issues.** on to consider them on appeal. [Shell v. Railway Co., 202 Mo. 339; Lohmeyer v. Cordage Co., 214 Mo. 685, l. c. 689; Miller v. Connor, 250 Mo. 677, l. c. 684.]

After a full consideration of all the issues in the case we are of the opinion that the plaintiff city, through the enactment of its viaduct ordinance, and the institution and prosecution of this cause to judgment in the circuit court prior to the date when the Public Service Commission law was enacted, acquired the right to have the proposed viaduct and the approaches thereto constructed by defendant at its own expense. Therefore the judgment appealed from will be affirmed.

All concur, except *Bond, J.,* who dissents.