**FRATERNAL ORDER OF POLICE LODGE # 2, Ed Wilson, Ron Fisher, and Kerry Klein, Appellants,**

v.

**CITY OF ST. JOSEPH, and St. Joseph Police Pension Board of Trustees, Respondents.**

**No. WD 56691.**

Missouri Court of Appeals, Western District.

Dec. 28, 1999.

Jackie Dale Hendrix, St. Joseph, for City of St. Joseph.

Therese Marie Schuele, Kansas City, for St. Joseph Police Pension Board.

Before ULRICH, P.J., EDWIN H. SMITH, and HOWARD, JJ.

ULRICH, Presiding Judge.

Fraternal Order of Police and three individual city police officers, each representing a separate class of officers with different total years of service,[1] appeal the declaratory judgment of the trial court in favor of St. Joseph Police Pension Board of Trustees ("Pension Board") and the summary judgment entered by the trial court in favor of the City of St. Joseph ("St.Joseph"). Appellants sought a declaratory judgment against Pension Board and St. Joseph to determine the rights, liabilities, and obligations of the parties in regard to the change in the method used to calculate retired officers' monthly pension amounts for service as St. Joseph police officers. Appellants claim that the trial court, in its declaratory judgment in favor of the Pension Board, erred in (1) finding the change in the method of calculating monthly pension amounts did not violate section 86.549.3, RSMo 1994, which prohibits first class cities from reducing retirement benefits; (2) ruling that the Pension Board was not estopped from changing the method of calculating pension amounts; (3) finding that the officers' future benefits are an expectancy and not a contractual entitlement, and the retired police officers had no contractual right to the former pension calculation; and (4) ruling that the

pension plan trustees properly exercised their discretion by adopting a new method of calculating pension amounts. Appellants further contend that the trial court erred in granting St. Joseph summary judgment by ruling that the ordinance enacted by St. Joseph did not cause the changes in the pension benefit calculation. The judgment of the trial court is affirmed.

## Facts

Prior to November 1961, St. Joseph, Missouri, operated pursuant to section 72.010, RSMo (repealed 1975) as a first class city. While operating as a first class city, St. Joseph and the St. Joseph police department established the police officers' pension fund pursuant to sections 86.510–577, RSMo. St. Joseph became a constitutional charter city in 1961, and its first city charter specifically provided that " ... existing retirement plans shall be continued.... " St. Joseph Charter § 7.8 (1961). In 1981, St. Joseph adopted its second charter, which included a provision that "all ordinances, regulations and resolutions in force at the time this charter takes effect, which are not inconsistent with ... this charter, shall remain and be in force until altered, modified or repealed." St. Joseph Charter § 16.2 (1981).

For many years until July 1989, the Pension Board determined pension benefits pursuant to first class city statutes, §§ 86.510–577, RSMo, even though St. Joseph was no longer a first class city. St. Joseph adopted the language of these statutes by ordinance, including section 86.549.3, RSMo 1994, which prohibited the reduction of pension retirement benefits, and section 86.540.1, RSMo 1994, which set the monthly pension benefit as "one-half the average monthly rate of salary ... during the twelve months immediately preceding ... retirement." §§ 86.549.3, 86.540.1, RSMo 1994. These provisions

---

1. Ed Wilson represents the category of active officers with more than five years but less than twenty years vested in the pension. Ron Fisher represents the category of active officers with more than twenty years vested in the pension. Kerry Klein represents the category of retired officers with more than twenty years but less then thirty-five years vested.

were included in the Saint Joseph Police Pension Fund Reference Manual for Board of Trustees. In 1989, St. Joseph adopted Special Ordinance 2090, which replaced sections 86.510 through 86.577, RSMo, and changed the pension benefit to forty percent of the "average monthly rate of salary ... in the highest twelve (12) consecutive months in the 120 months preceding ... retirement." [2] Thereafter, the Pension Board began the practice of including lump sum payments for earned accrued overtime (in 1991) and vacation pay (in 1994) as "salary" in the calculation of monthly pension amounts. St. Joseph also began including these lump sum payments in the calculation of both city and officer contributions to the pension plan.

In 1996, St. Joseph enacted Special Ordinance 4041 which authorized the implementation of the "City of St. Joseph, Missouri Police Pension Plan"("1996 plan") and specifically repealed all previous pension ordinances, including Special Ordinance 2090. St. Joseph's 1996 plan provided a plan benefit of forty percent of the "average of the highest twelve (12) consecutive months of the last one hundred twenty (120) consecutive months of covered employment at retirement." After St. Joseph adopted its 1996 plan, concerns over the pension plan's unfunded liability prompted the Pension Board to change its policy of including lump sum payments for accrued unpaid overtime and vacation pay in the calculation of monthly retirement pension amounts. This change effectively reduced the monthly pension amount for officers who had received a lump sum payment for accrued unpaid overtime and vacation pay within the twelve month calculation period. Under the new policy, accrued but unpaid overtime and vacation pay was prorated over the time which it was earned, even if paid in a lump sum during the pension-benefit calculation period.

2. The issue of whether St. Joseph may reduce officers' retirement pension benefit by ordinance is not presented and is not addressed in this appeal.

## Standard of Review

The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

## I. Application of Section 86.549.3, RSMo 1994, to Charter Cities

■ In appellants' first point on appeal, they claim that the trial court erred in holding that section 86.549.3, RSMo 1994, which prohibits first class cities from reducing retirement benefits, does not apply to St. Joseph. Appellants contend that since St. Joseph's police pension fund was created pursuant to the "first class cities" statutes (§§ 86.510–577, RSMo) when St. Joseph was a first class city, and these "first class cities" statutes were later incorporated by reference when St. Joseph become a constitutional charter city, these statutes continue to apply even though St. Joseph has since adopted ordinances which set out a different eligibility standard and formula for calculating pension benefits.

Missouri's general assembly, as authorized by article VI, § 15 of the Missouri Constitution, established four classes of cities, defining the classes of cities by population. Cities with populations equaling or exceeding the statutory amount may elect to become a city of that class. §§ 72.010–72.050, RSMo 1969. This classification scheme was organized so that "the powers of each class [are] defined by general laws so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions." Mo. CONST. ART. VI, § 15.

■ As an alternative to a city electing to become a first, second, third, or fourth class city, the Missouri Constitution permits a qualifying city [3] to frame and adopt

3. A qualifying city is "[a]ny city having more than five thousand inhabitants or any other

a charter for its own government. Mo. CONST. ART. VI, § 19. Specifically, the Missouri Constitution grants a constitutional charter city "all powers which the general assembly ... has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute. Such city shall, in addition to its home rule powers, have all powers conferred by law." Mo. CONST. ART. VI, § 19(a). Under section 19(a), the emphasis is whether the exercise of home rule city power conflicts with the Missouri Constitution, state statutes or the charter itself. *Cape Motor Lodge, Inc. v. City of Cape Girardeau,* 706 S.W.2d 208, 211 (Mo. banc 1986). Once a determination of conflict between a constitutional or statutory provision and a charter or ordinance provision is made, the state law provision controls. *Id.* By 1975, all first and second class cities in Missouri had chosen to become constitutional charter cities. PETER W. SALSICH, JR., MISSOURI LOCAL GOVERNMENT LAW § 1.10, THE MISSOURI BAR (1990). However, many statutes pertaining to first and second class cities have not been abrogated.

Appellants contend that section 86.549.3, RSMo 1994, prohibits Respondents from any action that would "have the effect of reducing retirement benefits." Respondents claim that this statute is applicable to first class cities and, therefore, is inapplicable to St. Joseph's pension plan as St. Joseph is a constitutional charter city and not a first class city. Section 86.549.3, RSMo 1994, is contained under the section of statutes pertaining only to first class cities and states that the "employment provided for by sections 86.540, ... shall in no way affect any person's eligibility for retirement benefits under this chapter, or in any way have the effect of reducing retirement benefits, other provisions of the law to the contrary notwithstanding."

Section 86.540, RSMo 1994, provides, for first class cities, the minimum service eligibility requirements to receive a pension and the formula for calculating police department pension benefits. It provides that the monthly pension benefit is to be calculated as "one-half the average monthly rate of salary which the member received on the force during the twelve months immediately preceding the date of his retirement." § 86.540.1, RSMo 1994.

■ The enactment of a charter form of government by a city automatically supersedes the statutory provisions applicable to the government of cities of the class into which the legislature had, by population, placed the city, subject to the limitation that the provisions of such charter be in harmony with the Constitution and laws of the state. *McGhee v. Walsh,* 249 Mo. 266, 155 S.W. 445, 448 (1913). A statute exclusively applicable to a first class city has no application to a city operating under the charter form of government. *Leoffler v. Kansas City,* 485 S.W.2d 633, 634 (Mo.App.1972), *vacated on other grounds,* 557 S.W.2d 656 (Mo.App.1977). Other cases cited by the *Leoffler* court cited for this proposition include: *City of Kansas v. Zahner,* 73 Mo.App. 396, 400 (1898); *Ballentine v. Nester,* 350 Mo. 58, 164 S.W.2d 378, 381 (Mo. banc 1942); *Komen v. City of St. Louis,* 316 Mo. 9, 289 S.W. 838, 843 (1926); *State ex rel. City of St. Louis v. Missouri Pac. Ry. Co.,* 262 Mo. 720, 174 S.W. 73, 76 (banc 1914).

At all relevant times to the issues on appeal, St. Joseph was not a first class city but was instead a constitutional charter city empowered by the Missouri Constitution home rule provisions to enact or repeal ordinances governing its police pension plan, including repealing the ordinance prohibiting the reduction of pension benefits. The application of statutes, which, by their plain and unambiguous language, apply only to first class cities, to

incorporated city as may be provided by law." Mo. CONST. ART. VI, § 19.

constitutional charter cities, would usurp the home rule powers granted by the Missouri Constitution to constitutional charter cities. St. Joseph's adoption by ordinance of the language of statutes applicable to first class cities did not convert the ordinance to statutory status and thereafter restrict St. Joseph's legal ability to alter or rescind its ordinance as may otherwise be provided by law. Accordingly, the trial court did not err in finding the restriction against reducing pension benefits, contained in section 86.549.3, RSMo 1994, inapplicable to Respondents. Point I is denied.

## II. Equitable Estoppel

Appellants claim in their second point on appeal that the trial court erred in ruling that the Pension Board was not estopped from changing the method of calculating pension amounts. Appellants contend that since the Pension Board adopted a practice of including, as remuneration for a single year, the lump sum payments of accrued but unpaid vacation and overtime pay in the pension amount calculation; and that certain officers relied upon that practice and continued their employment with the city, the Pension Board should be equitably estopped from changing this practice of calculating pension amounts.

Equitable estoppel is normally not applicable against a governmental entity. *State ex rel. Capital City Water Co. v. Missouri Public Service Comm'n*, 850 S.W.2d 903, 910 (Mo.App. W.D.1993)(citing *Farmers' and Laborers' Coop. Ins. Ass'n v. Director of Revenue, State of Missouri*, 742 S.W.2d 141, 143 (Mo. banc 1987)). The application of equitable estoppel against governmental entities or public officers is limited to exceptional circumstances where right of justice or the prevention of manifest injustice requires its application. *Id.* (citing *Murrell v. Wolff*, 408 S.W.2d 842, 851 (Mo.1966)). The doctrine is not favored by law and is not to be casually invoked. *Capital City Water Co.*, 850 S.W.2d at 910. Equitable estoppel is not applicable if it will interfere with the proper discharge of governmental duties, curtail the exercise of the state's police power or thwart public policy. *Id.* The underlying principle behind its limited application to governmental entities and public officials is that public rights should yield only if private parties possess greater equitable rights. *Id.*

Equitable estoppel has three elements: (1) an admission, statement or act inconsistent with the claim afterwards asserted and sued upon; (2) action by another party on the faith of such admission, statement, or act; and (3) injury to such other party, resulting from allowing contradiction of the admission, statement, or act. *Missouri Highway and Transp. Comm'n v. Myers*, 785 S.W.2d 70, 73 (Mo. banc 1990). In an estoppel claim against the government, these three elements must be satisfied in addition to showing that the governmental conduct on which the claim is based constitutes affirmative misconduct. *Capital City Water Co.*, 850 S.W.2d at 910 (citing *Farmers' and Laborers' Coop. Ins. Ass'n. v. Director of Revenue, State of Missouri*, 742 S.W.2d 141, 143 (Mo. banc 1987)); *Missouri Gas Energy v. Public Service Comm'n, State of Missouri*, 978 S.W.2d 434, 439 (Mo.App. W.D.1998). A party relying on the doctrine of estoppel has the burden of proving all of the essential elements by clear and satisfactory evidence. *Capital City Water Co.*, 850 S.W.2d at 910.

In this case, Appellants have failed to meet their burden of proving affirmative misconduct by the Pension Board, and therefore, the Pension Board cannot be equitably estopped from changing the method of calculating pension amounts. Furthermore, the private rights of the individual police officers who would receive the amounts of the former pension calculation method do not outweigh the rights of the public, and participating police officers, in maintaining a solvent police pension fund and promoting public safety with pension benefit policies that discourage police

officers from accumulating unused vacation and overtime. The Pension Board's enforcement of the revised method of calculating vacation and overtime to help maintain the pension plans solvency is reasonable and does not constitute misconduct. Point two is denied.

### III. Contractual Entitlement and Rights

In Appellant's third point on appeal, they argue that the trial court erred in finding that the officers' future benefits are a mere expectancy and not a contractual entitlement and they did not acquire any contractual right to have the former pension method calculation continued. Appellants assert that the Pension Board's decision to reverse the two-year-old practice of calculating lump sum payments for unused vacation and overtime pay for the year paid by attributing the payment to the years when earned impairs their contractual rights and violates their substantive due process rights.

The general rule is that a pension granted by public authorities is not a contractual obligation but is a gratuitous allowance, in the continuance of which the pensioner has no vested right, and that a pension is accordingly terminable at the will of the grantor, either in whole or in part. *State ex rel. Phillip v. Public School Retirement System of City of St. Louis,* 364 Mo. 395, 262 S.W.2d 569, 576 (banc 1953). And since there is no contract on the part of the state to continue the payment of a benefit or annuity, a change in the law affecting such benefit or annuity does not impair the obligation of a contract or deprive a pensioner of property within the constitutional meaning. *Id.*

Governmental employees can have no property rights in a pension fund, nor can those claiming under them have any such rights except their claims be based upon and come within the laws governing the fund. *Id.* The extent of the rights which vested in employees is governed by the controlling statute in effect at the time their rights to a pension vested, which became a part of the contract of employment as much as if its provisions were written therein. *Atchison v. Retirement Bd. of Police Retirement System of Kansas City,* 343 S.W.2d 25, 34 (Mo.1960).

In this case, the officers' rights in the pension fund are determined by the ordinances enacted by St. Joseph, under its home rule powers, granted by the Missouri Constitution, and by the administrative procedures promulgated by the Pension Board, under powers granted it by city ordinance. As there is nothing in the ordinances or pension plan which creates a right to have a certain method of calculating pension amounts continued, employees have no vested right to the continuation of a certain method of calculating pension amounts. The trial court did not err in finding that the officers' future benefits are a mere expectancy and not a contractual entitlement and that the officers did not acquire any contractual right to have the former pension method continued. Point III is denied.

### IV. Discretion of the Pension Board of Trustees

Appellants contend that the trial court erred in ruling that the Pension Board properly exercised its discretion by adopting a new method of calculating pension amounts. Appellants allege that the Pension Board abused its discretion in three ways: (1) by failing to follow the provisions of Special Ordinance 4041 which did not expressly eliminate the accrued lump-sum policy, (2) by failing to follow proper rule-making procedures in eliminating the lump-sum policy, and (3) by relying on a plan actuarial study which allegedly contained material errors and caused the results to be materially misstated.

Article III of St. Joseph's 1996 Plan, enacted by Special Ordinance 4041, provides that "[t]he Plan shall be administered by a Board of Trustees. Said Board shall organize and operate in accordance

with the Plan and within the laws provided by federal, state and local laws."[4] It also states that "[t]he Board shall consist of nine (9) members who shall be the Budget Manager, City Attorney, City Clerk, Director of Finance, Police Chief, two delegates at large from the Police Department and two retired delegates from the Pension List." St. Joseph Police Pension Plan, Art. III, § 1(b) (1996). The 1996 Plan specifically provides that the "Director of Finance shall be the treasurer of the Pension Fund and shall be responsible for calculation of new Plan Benefits; said calculation(s) shall be reviewed by the Board." St. Joseph Police Pension Plan, Art. III, § 1(b)(iii) (1996). In addition, section 4 of Article III of St. Joseph's 1996 Plan lists several powers given to the Board of Trustees, including the power to "receive, hear and rule upon all claims relative to the Plan." St. Joseph Police Pension Plan, Art. III, § 4(e) (1996).

Although St. Joseph has the legislative authority to specify how benefit calculations will be made, the 1996 Plan enacted by Special Ordinance 4041 contains no such specification for calculating as a part of the benefits paid to retired police officers the lump-sum payments at issue in this case. St. Joseph has explicitly divested itself of significant control of the pension fund and of the Pension Board by expressly giving the responsibility for calculating new Plan Benefits to the Director of Finance, acting in his capacity as a Pension Board member, and by not enacting precise rules and regulations for the method used to calculate pension amounts. Because Special Ordinance 4041 does not contain specifications for how pension amounts are to be calculated and expressly confers that responsibility to the Director of Finance Pension Board member, the Pension Board cannot be found to have abused its discretion by changing the method of calculating pension amounts.

4. Whether St. Joseph's delegation of authority to the Pension Board is constitutional is not

The Pension Board's actions eliminating the accrued lump-sum policy for calculating pension amounts appear to be consistent with all the applicable provisions of Special Ordinance 4041.

■ Appellants further claim that the Pension Board abused its discretion by failing to follow proper rule-making procedures when it changed its policy of including the entire lump sum payment for multi-year accrued vacation and overtime in the pension remuneration calculation. Appellants contend that the rule-making process articulated in section 536.021, RSMo Cum.Supp.1998, must be followed or the proposed amended or new rule is void.

Section 536.021, RSMo Cum.Supp.1998, sets out the procedure for rule-making for "any state agency." "State agency" is defined as "each board, commission, department, officer or other administrative office or unit of the state *other than* the general assembly, the courts, the governor, or a *political subdivision of the state.*" § 536.010(5), RSMo 1994 (**emphasis added**). As the Pension Board is a board of St. Joseph, a political subdivision of the state, the definition of "state agency" within section 536.010(5), RSMo 1994, is not applicable to it. Thus, section 536.021, RSMo Cum.Supp.1998, rule-making procedures are inapplicable to the Pension Board's action.

■ Finally, appellants allege that the Pension Board abused its discretion by relying on a plan actuarial study which allegedly contained material errors and caused the results to be materially misstated. As the trial court correctly observed, "the trustees were entitled to rely upon their actuaries, even though an expert employed by [Appellants] reached different conclusions."

presented and is not addressed in this appeal.

Accordingly, the trial court did not err in ruling that the Pension Board properly exercised its discretion by adopting a new method of calculating pension amounts. Point IV is denied.

## V. Summary Judgment in Favor of City of St. Joseph

■ Appellants, in their final point, claim that the trial court erred in granting St. Joseph's motion for summary judgment. Appellants argue that St. Joseph's action of enacting Special Ordinance 4041 caused the changes in the method of calculating pension amounts because it had the operative effect of eliminating the policy of considering lump-sum payments in one year instead of prorating them over the years they were earned.

Appellate review of a summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.*

Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* at 376. A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action; (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established the right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. The non-moving party may not rely on mere allegations and denials of the pleadings but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.; Reeves v. Keesler*, 921 S.W.2d 16, 19 (Mo.App. W.D.1996).

In this case, the Pension Board has the power to act independently of St. Joseph's control. Special Ordinance 4041 grants the Pension Board eleven powers, including the power "to receive, hear and rule upon all claims relative to the Plan," and does not require St. Joseph's approval or permit St. Joseph's veto of the Pension Board's actions. This granting of specific powers to the Pension Board regarding the police pension plan evinces St. Joseph's intent that the Pension Board be able to act independently of St. Joseph's control.

None of St. Joseph's police pension plans, either created by statute or by city ordinance, has ever specifically addressed the issue of how lump-sum vacation or overtime payments should affect the calculation of pension amounts. The only reference to the inclusion of lump-sum payments in figuring pensions is contained in the "St. Joseph Police Pension Fund Reference Manual for Board of Trustees" which was established by the Pension Board. St. Joseph could have included specific rules concerning the effect of lump-sum payments upon benefit calculations in its 1996 plan; however, it did not. By declining to so act, St. Joseph evinced its intent to delegate such matters to the Pension Board's administrative powers and discretion. Appellants have not established that St. Joseph's 1996 Plan is sub-

stantially different from the previous plan that would require the Pension Board to change its pension benefit calculation formula. The trial court, therefore, did not err in granting St. Joseph's motion for summary judgment. Point V is denied.

The judgment of the trial court is affirmed.

All concur.