**Opinion filed October 12, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00195-CR

_____

## CHRISTOPHER CHAD PRICE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR56842**

## M E M O R A N D U M   O P I N I O N

Appellant, Christopher Chad Price, was indicted on four counts for the offense of aggravated assault against a public servant, a first-degree felony. TEX. PENAL CODE ANN. § 22.02(b)(2)(B) (West Supp. 2022). The indictment included two enhancement allegations. After a jury trial, Appellant was convicted on all four counts. The jury found the enhancement allegations to be "true" and assessed Appellant's punishment for each count at life imprisonment in the Institutional

Division of the Texas Department of Criminal Justice. *See* PENAL § 12.42(c)(1) (West 2019). The trial court sentenced Appellant accordingly.

In his sole issue on appeal, Appellant contends that the trial court abused its discretion when it admitted evidence during the guilt/innocence phase of his trial of the death of Brittany Teichrobe, the driver of the getaway vehicle from which Appellant shot at law enforcement officers. We affirm.

## I. *Factual Background*

Appellant's charged offenses arose from a shootout that he initiated with law enforcement officers while he and Teichrobe were evading from the officers in their vehicle. The pursuit and shootout ended when Appellant and Teichrobe exited their vehicle to evade on foot across a field and were both shot by pursuing law enforcement officers; Teichrobe was killed and Appellant was wounded. Appellant was apprehended and charged with four counts of aggravated assault against a public servant.

United States Marshal Jay Easley testified that he was tasked with locating and arresting two fugitives, Appellant and Teichrobe. Marshal Easley had information that the vehicle the two fugitives were operating was in the area of Ponderosa and Willow Drive in Ector County. The two were observed operating a vehicle that bore a license plate registered to a different vehicle, which Marshal Easley testified could indicate that the vehicle was stolen or could be an attempt to conceal the driver's identity. Law enforcement officers surveilled Appellant and Teichrobe in a residential area and later at a local gas station but chose not to make immediate contact with them out of concern for bystanders. When the fugitives left the gas station in the vehicle—with Teichrobe driving and Appellant in the passenger seat—a marked DPS patrol unit attempted to conduct a traffic stop but the vehicle failed to stop and evaded at a high rate of speed toward Midland.

Lieutenant Kenneth Zane Greenwood of the Texas Department of Public Safety, who serves as a pilot and tactical flight officer for the agency, was operating the camera and radio system of a DPS helicopter that day. Video and audio footage from the helicopter's camera was admitted and showed the vehicle at the gas station and then the fugitives evading from the marked DPS unit. During the pursuit, the helicopter footage shows Appellant leaning out of the passenger window and firing a weapon at the pursuing officers. The weapon was later identified as a shotgun.

The pursuit continued on Highway 191 into Midland County with the fugitives' vehicle traveling at a high rate of speed toward Midland and crossing multiple lanes of traffic. The driver lost control of the vehicle and it came to rest on a median between the westbound service road and the access road to the westbound lane. While their vehicle was still moving, both fugitives exited and ran on foot. As Appellant exited, he appeared to point something at the pursuing officers. Both fugitives ran through a fence and into a field where they were shot by law enforcement officers as they attempted to evade them. Teichrobe was killed and Appellant was wounded. A shotgun was found beside Appellant where he fell to the ground after he was shot.

## II. *Standard of Review*

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Ruiz v. State*, 631 S.W.3d 841, 855 (Tex. App.—Eastland 2021, pet. ref'd) (citing *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019)); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). This standard also applies to a trial court's decision to admit or exclude extraneous-offense evidence. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Barron v. State*, 630 S.W.3d 392, 410 (Tex. App.—Eastland 2021, pet. ref'd). We will not reverse a trial court's evidentiary ruling, and there is no abuse of discretion, unless that decision lies outside the zone of reasonable disagreement. *Ruiz*, 631

S.W.3d at 856 (citing *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018)). Furthermore, we will not disturb a trial court's decision, even if its reasoning was flawed, if it is correct on any theory of law that reasonably finds support in the record and is applicable to the case. *Id.* (citing *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016)).

### III. *Analysis*

Appellant contends that the admission of testimony and evidence of the shooting and death of Teichrobe constituted an abuse of discretion because it was (1) irrelevant, (2) an inadmissible extraneous offense, and (3) unfairly prejudicial. We disagree.

For evidence to be relevant under Rule 401 it must make the existence of any fact that is of consequence more or less probable than it would be without the evidence. TEX. R. EVID. 401; *Montgomery*, 810 S.W.2d at 387. There must be a "direct or logical connection" between the evidence and the fact the proponent is attempting to prove. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). Circumstantial evidence is as probative of guilt as direct evidence. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Pieces of evidence that may seem weak in isolation may become stronger when they are consistent with each other. *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003). The relevance of evidence is not always clear cut, and reasonable people may disagree about whether certain evidence leads to a particular inference. *Montgomery*, 810 S.W.2d at 391. If the relevance of evidence depends on the existence of a fact, then the trial court may admit the proposed evidence contingent upon the introduction of sufficient evidence to prove that fact. TEX. R. EVID. 104(b).

Evidence of a crime, wrong, or act other than the charged offense is not admissible to prove that the defendant acted in conformity with his character; however, such evidence may be admissible for other purposes. TEX. R. EVID. 404(b).

For example, evidence of extraneous offenses that arise from the same transaction may be admissible to provide appropriate context for the charged offense, or to prove motive, opportunity, intent, preparation, knowledge, identity, the absence of mistake or lack of accident. *Id.*; *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). If a trial court determines that evidence of a defendant's extraneous acts is relevant and admissible under Rule 404(b), and a timely, proper objection is made, the trial court must engage in a Rule 403 analysis to determine whether the probative value of the evidence is substantially outweighed by a danger of unfair prejudice. *See* TEX. R. EVID. 403; *Montgomery*, 810 S.W.2d at 386.

A. *Extraneous Offense Admissible as Same-Transaction Contextual Evidence*

The State contends that Teichrobe's death is an extraneous offense committed by Appellant, rather than simply an evidentiary fact. We agree. "The standard for [the] admission of extraneous-offense evidence is high: 'a trial court cannot admit extraneous-offense evidence unless a jury could find beyond a reasonable doubt that the defendant committed the extraneous offense.'" *Inthalangsy v. State*, 634 S.W.3d 749, 756 (Tex. Crim. App. 2021) (quoting *Fischer v. State*, 268 S.W.3d 552, 558 (Tex. Crim. App. 2008)).

Appellant could have been charged with Teichrobe's death because his conduct caused her death in a manner for which he could be held criminally responsible. *See* PENAL § 6.04 (West 2021), § 19.02(b)(1) (West 2019); *Dowden v. State*, 758 S.W.2d 264, 273 (Tex. Crim. App. 1988); *see also* PENAL § 19.02(b)(3). Here, when he initiated the shootout with law enforcement, all of which was captured by the helicopter's camera, Appellant was aware that his conduct could result in the death of one or more of those involved—the pursuing law enforcement officers, himself, or his compatriot Teichrobe. *See e.g.*, *Dowden*, 758 S.W.2d at 273; *Baker v. State*, No. 02-17-00193-CR, 2020 WL 1808292, at *8–10 (Tex. App.—Fort Worth April 9, 2020, no pet.) (mem. op., not designated for publication); *Kennedy v. State*,

No. 06-06-00002-CR, 2006 WL 2787477, at *3 (Tex. App.—Texarkana Sept. 29, 2006, no pet.) (mem. op., not designated for publication).

The jury viewed the helicopter's video footage, which showed law enforcement's pursuit and apprehension of Appellant and Teichrobe. The footage showed both fugitives being shot after they exited their vehicle and as they ran from law enforcement into the field, as well as the subsequent first aid efforts. Appellant did not object to the admission of the video on the basis that it showed the events surrounding the shootings, although he did object to it on other grounds that are not raised on appeal. In this case, the evidence shows that Teichrobe's death occurred as a result of the shootout that Appellant had initiated with law enforcement.

Although evidence of Teichrobe's death itself may not be relevant to prove any element of the charged offense, evidence concerning the circumstances of her death constitutes same-transaction contextual evidence. *See Inthalangsy*, 634 S.W.3d at 756. This type of evidence is admissible as an exception under Rule 404(b) because it "illuminate[s] the nature [and context] of the crime alleged." *Id.* (quoting *Comacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993)); *see also Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (op. on reh'g). The jury is entitled to know all the facts that are "'blended or closely interwoven' with a continuous criminal episode" so that it may realistically evaluate the evidence. *Inthalangsy*, 634 S.W.3d at 756 (quoting *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986)); *see also Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Therefore, the same-transaction evidence must be "necessary to the jury's understanding of the offense" such that the charged offense would make little sense without its admission. *Inthalangsy*, 634 S.W.3d at 756 (quoting *Poindexter v. State*, 942 S.W.2d 577, 584 (Tex. Crim. App. 1996)).

In *Inthalangsy*, the defendant was charged with capital murder of a man—Jimmy—committed while in the course of kidnapping the man's girlfriend—Cassie.

6

*Id.* at 751. The defendant later murdered Cassie. *Id.* The evidence showed that Cassie owed a substantial amount of money (derived from illegal drug-trafficking profits) to the defendant and two other people. *Id.* at 752. Witnesses observed the defendant enter a residence where Jimmy and Cassie were staying; a gunshot rang out, and the defendant and his associate walked out of the residence with Cassie in between them. *Id.* She appeared nervous as if she was about to cry. *Id.* The defendant and his associates left the scene with Cassie sitting between them in the back seat of their vehicle. *Id.* Witnesses entered the house and found Jimmy gasping for breath and bleeding from a large hole in his face—he died in a hospital shortly thereafter. *Id.* Cassie's body was found with multiple gunshot wounds in a nearby river. *Id.* The medical examiner estimated that she died on the same day as Jimmy. *Id.*

The defendant sought to exclude any reference to Cassie's death. *Id.* The Court of Criminal Appeals held that evidence of Cassie's death was relevant and admissible as same-transaction contextual evidence because her death provided necessary context of the defendant's continuing course of conduct that included capital murder. *See id.* at 757 ("One cannot tell the story of Cassie's kidnapping without revealing the end of the story. [Jurors] would naturally wonder what happened to Cassie after she left [the residence] and why she did not testify about what happened to her on [the day she was kidnapped"].).

The same logic applies here. As we have said, the jury viewed the sequence of events as recorded by the DPS helicopter's camera, which showed the pursuit and apprehension of Appellant and Teichrobe. The video footage showed both fugitives being shot as they ran from law enforcement in the field, as well as first aid efforts that were made thereafter. As in *Inthalangsy*, the jury here would naturally wonder about Teichrobe's involvement and fate, and her death illuminated the full nature of Appellant's crime—his act of shooting at the pursuing law enforcement officers,

7

which he had initiated, and which led to both fugitives' apprehension and ultimately to Teichrobe's death.  *See id.*  This evidence was indivisible from the ongoing encounter between Appellant and law enforcement, including the conduct that constitutes the basis for his charged offenses.  Therefore, this evidence was admissible as same-transaction contextual evidence.

B.  *Unfairly Prejudicial*

Appellant made numerous objections under Rule 403 regarding the content of the helicopter video footage of law enforcement's pursuit of Appellant and Teichrobe.  On appeal, Appellant globally complains about the admission of this evidence—both the video footage and witness testimony that described the events depicted in the video footage—and he raises arguments concerning Teichrobe's death.

Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial.  *Walter v. State*, 581 S.W.3d 957, 978 (Tex. App.—Eastland 2019, pet. ref'd) (citing *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002)).  Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision.  *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd).

When conducting a Rule 403 analysis, the trial court must balance: (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.  *Garcia v. State*, 630

S.W.3d 264, 268 (Tex. App.—Eastland 2020, no pet.) (citing *Gigliobiano v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 analysis and determined that the evidence was admissible, even if the analysis is not performed on the record. *See Roe v. State*, 660 S.W.3d 775, 784 (Tex. App.—Eastland 2023, pet. ref'd); *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd).

Teichrobe's death was mentioned periodically during the guilt/innocence phase of trial. During the State's opening statement, the prosecutor stated: "And because of these events, there was a tragedy. Brittany Teichrobe is no longer here. Her life was lost because of these events." Next, Texas Ranger Stephen Gray stated that he observed the spot where "Brittany Teichrobe was shot and ended up sustaining fatal wounds." Finally, the State mentioned in its closing argument that: "[B]ecause of all of those actions, Brittany [Teichrobe] is no longer here." Although Appellant urges that Teichrobe's death was highly emphasized by the State and that the references to her death improperly transformed the trial into a "mini-trial" against Appellant for causing her death, the State briefly and sparingly referred to Teichrobe's death only within the context of the cases' core issue—the pursuit, shootout, and apprehension of Appellant. As discussed, the evidence that showed Teichrobe's involvement (and her fate) was indivisible from the evidence that showed Appellant's ongoing criminal conduct.

The trial court's decision to admit this evidence was within the zone of reasonable disagreement. The evidence was highly probative and the State's need for the evidence was great—the entire encounter between law enforcement and Appellant occurred within the context of Appellant's and Teichrobe's flight, on foot and through a high-speed chase in a vehicle, which included the shootout and both fugitives' eventual apprehension after they were shot by law enforcement. The State

did not over-emphasize the circumstances of Teichrobe's death to the jury, and the few references to her death were not likely to be given undue weight by the jury, or to confuse or distract the jury from the issues that were central to Appellant's charged offenses.

We conclude that the trial court did not abuse its discretion when it admitted evidence concerning the occurrence and the circumstances of Teichrobe's death. Accordingly, we overrule Appellant's sole issue.

### IV. *This Court's Ruling*

We affirm the judgments of the trial court.


W. STACY TROTTER

JUSTICE


October 12, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.